# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**HEATHER P.[1]**,

          Plaintiff,

    v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:20-cv-1978-SI

**OPINION AND ORDER**

Betsy R. Shepherd, 425 Riverwalk Manor Drive, Dallas, GA 30132. Of Attorneys for Plaintiff.

Scott Erik Asphaug, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Heather P. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying her application for Disability Insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on October 9, 2018, alleging disability beginning on May 15, 2016. AR 63. Plaintiff's date of birth is December 17, 1972, and she was 43 years old as of the

alleged disability onset date. AR 64. The agency denied her claim both initially and upon

reconsideration, and Plaintiff requested a hearing. AR 92, 101, 104. Plaintiff appeared for a

hearing before an ALJ in April 2020. AR 33. The ALJ issued a decision denying Plaintiff's claim

for benefits. AR 17-27. Plaintiff requested review of the ALJ's decision, which the Appeals

Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and

Plaintiff seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary step for Plaintiff's claim, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2020. AR 19. The ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2016. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of a history of Hodgkin's lymphoma status post stem cell transplant, hiatal hernia, hypertension, hypothyroidism, fibromyalgia with diffuse somatic dysfunction, gastroesophageal reflux disease, and obesity. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 404.1567(b). Specifically, she is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking for about six hours, and sitting for about six hours in an eight-hour workday with normal breaks. She is also limited to frequent climbing of ramps or stairs and occasional climbing of ladders, ropes, or scaffolds. In addition, she is limited to frequent balancing, stopping, kneeling, crouching, and crawling.

*Id.* Based on these limitations, at step four, the ALJ found that Plaintiff could perform her past relevant work as an administrative clerk, insurance clerk, and transit clerk. AR 27. The ALJ thus concluded that Plaintiff was not disabled. *Id.*

**DISCUSSION**

Plaintiff argues the ALJ erred by discounting her symptom testimony, Dr. Kathryn Menninger's opinion, and the testimony of Plaintiff's father. The Court addresses each alleged error in turn.

## A. Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016).

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Here, the Commissioner first argues the ALJ properly discounted Plaintiff's testimony because Plaintiff left her prior job for reasons other than her impairments but reported to the Social Security Administration in 2015 that she left her job due to her impairments. *See* AR 165. This reason amounts an assessment of Plaintiff's credibility, which SSR 16-3p does not permit. *See* SSR 16-3p, *available at* 2016 WL 1119029, at *1-2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."); *see also Swartout v. Kijakazi*, 2022 WL 563858, at *7 (E.D. Cal. Feb. 24, 2022) (concluding that discounting a claimant's testimony due to inconsistent reasons for stopping work was an improper credibility analysis). Thus, Plaintiff's explanation for stopping work was not a proper reason to discount her testimony. The Commissioner also argues the ALJ properly rejected Plaintiff's testimony based on Plaintiff's daily living activities and conservative treatment. The Court analyzes those two reasons below.

### 1. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a

totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ rejected Plaintiff's testimony in part because Plaintiff's daily living activities included "driving, washing, cleaning, cooking, and shopping, all without use of any ambulatory aids." AR 24. Plaintiff testified at the hearing, however, that she pushes herself to do these tasks despite the pain that later sets in. *See* AR 53. Plaintiff explained that although standing in one place for more than a couple minutes becomes "unbearable," "exertion with motions" tends to counteract the pain. AR 49. Plaintiff testified that she vacuums once per week, which supports

her prior statement that exertion with motion is less painful than standing still. *See* AR 56.

Plaintiff further testified that vacuuming is the only physical exertion she can tolerate in one day

and that she is "always in increased pain afterwards." AR 53. When she finishes vacuuming after

taking many breaks, she cannot take a shower because standing in one place is too painful. *Id.*

Plaintiff testified that on the days she vacuums, she cannot do any other cleaning. *Id.* Plaintiff

also explained that she can tolerate no more than simple cooking because standing for too long

causes pain. AR 55. Plaintiff testified that she tried cooking an elaborate meal that required three

hours to prepare, but was in "extreme pain for five hours" and then she could not move for two

days after that. *Id.* These activities do not conflict with her symptom testimony. Thus, Plaintiff's

activities of daily living was not a clear and convincing reason supported by substantial evidence

to reject Plaintiff's testimony.

## 2. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective

testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742,

750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference

that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533

F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the

intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). If, however,

the claimant has a good reason for not seeking more aggressive treatment, conservative treatment

is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r,

Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ also rejected Plaintiff's testimony due to her failure to take medication for her

fibromyalgia and failure to exhaust "all other methods of treatment of her fibromyalgia." AR 24-

25. Plaintiff's medical records show that she does not take any fibromyalgia medication and has

refused such medication. *See* AR 472, 477, 798. At the hearing, however, Plaintiff explained that

she does not take fibromyalgia medication because after her experience with cancer treatment,

she now closely weighs a medication's potential benefits against any side effects. *See* AR 51.

Further, Dr. Menninger's treatment notes confirm that Plaintiff did not want to take fibromyalgia

medication given the "potential side effect profile." AR 477. Unwanted side effects are an

adequate reason to refuse medication. *See Carmickle*, 533 F.3d at 1162 (concluding that failure

to take medication is not a proper reason to discount a claimant's testimony when the medication

causes adverse side effects).

The Commissioner also argues the ALJ properly discounted Plaintiff's testimony because

she refused physical therapy. The treatment note documenting that Plaintiff declined physical

therapy, however, also notes that Plaintiff would "[c]ontinue with OMM," osteopathic

manipulative medicine. AR 472. Osteopathic manipulation is a form of treatment that combines

chiropractic medicine, massage, and physical therapy. *See* AR 254. Thus, Plaintiff had not

declined all forms of treatment and at the time she declined to pursue physical therapy, had

already sought out osteopathic manipulation treatment. Plaintiff testified that she later stopped

the osteopathic manipulation treatment because the relief it provided only lasted one or two days

and cost her gas money to get to the doctor's office. AR 50-51. These reasons are adequate

reasons for not seeking more aggressive treatment. *See Orn*, 495 F.3d at 638 (concluding that

financial barriers to treatment adequately explained infrequent medical visits). Thus, Plaintiff's

failure to take fibromyalgia medication or seeking further treatment options was not a clear and

convincing reason supported by substantial evidence to reject Plaintiff's testimony. The Court

must therefore determine whether the ALJ committed harmful error by rejecting Plaintiff's

testimony.

### 3. Harmless Error

An error is harmless if it is "inconsequential to the ultimate nondisability determination."

*Molina*, 674 F.3d at 1115; *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it

is "clear from the record the error was inconsequential to the ultimate non-disability

determination"). A court should not automatically reverse on account of error, but should make a

determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

"Determination of prejudice requires 'case-specific application of judgment, based upon

examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki*

*v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially

include, among others:

> an estimation of the likelihood that the result would have been
> different, an awareness of what body (jury, lower court,
> administrative agency) has the authority to reach that result, a
> consideration of the error's likely effects on the perceived fairness,
> integrity, or public reputation of judicial proceedings, and a
> hesitancy to generalize too broadly about particular kinds of errors
> when the specific factual circumstances in which the error arises
> may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it

affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural

rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the

circumstances of the case, that further administrative review is required to determine whether

there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere

probability of prejudice is not enough, but where there is a substantial likelihood of prejudice,

then remand is appropriate. *Id.*

The ALJ's decision to discredit Plaintiff's symptom testimony was not harmless error because Plaintiff testified to symptoms and limitations not incorporated into her RFC. For example, Plaintiff testified that due to her symptoms, she experiences extreme pain and cannot move at all about four to six days per month. AR 55-56. The VE testified that employers do not tolerate more than one to two absences per month. AR 60. Because the RFC did not properly account for Plaintiff's symptom testimony, the ALJ's error was not harmless. *See Samuel Shane W. v. Comm'r of Soc. Sec.*, 2021 WL 1963618, at \*5 (D. Or. May 17, 2021) (remanding for further proceedings to incorporate the plaintiff's erroneously discredited symptom testimony into his RFC).

**B.  Dr. Menninger's Medical Opinion**

Plaintiff filed her application for benefits on October 9, 2018. AR 63. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, --- F. 4th ---, 2022 WL 1195334, at \*6 (9th Cir. Apr. 22, 2022). The new regulations eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors,[3] in

---

[3] The secondary factors include relationship with claimant, specialization, and "[o]ther factors." 20 C.F.R. § 404.1520c(c).

determining how persuasive the opinions are. *Id.* § 404.1520c(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence, and the source's explanation for the opinion. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with other medical opinions and prior administrative findings. *Id.* § 404.1520c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, --- F. 4th at ---, 2022 WL 1195334, at *6.

The Commissioner argues the ALJ properly rejected Dr. Menninger's opinion because the opinion relied on Plaintiff's symptoms and lacked the support of objective findings. Fibromyalgia, however, "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. Thus, Dr. Menninger's reliance on Plaintiff's report of her symptoms is expected. Further, Dr. Menninger's treatment notes support her opinion. Dr. Menninger documented Plaintiff's tender points, which is one of the objective criteria used to diagnose fibromyalgia in addition to a claimant's symptoms. *See* AR 798; SSR 12-2p, *available at* 2012 WL 3104869, at *3. Dr. Menninger also documented Plaintiff's fibromyalgia symptoms, which include pain in her neck, shoulders, lower back, ankles, calves, thighs, and right arm. AR 783. This medical evidence supports Dr. Menninger's opinion.

The Commissioner also argues that Plaintiff's 30 out of 30 score on her mental status exam conflicts with Dr. Menninger's opinion that Plaintiff's symptoms would affect her attention and concentration for 20 percent of the workday. *See* AR 747-48 (mental status exam); AR 800 (Dr. Menninger's opinion). The mental status exam, however, only tested whether Plaintiff could complete basic tasks such as naming the day's date, spelling the word "world" backwards, and recalling three words at time. AR 747-48. Plaintiff's ability to complete those tasks does not conflict with Dr. Menninger's finding that her symptoms affect her ability to maintain attention and concentration at work. The ALJ's proffered reasons to discount Dr. Menninger's medical opinion are not supported by substantial evidence.

Rejecting Dr. Menninger's opinion was harmful error because the limitations included in Dr. Menninger's opinion are greater than incorporated into Plaintiff's RFC. Dr. Menninger opined that Plaintiff would be absent from work more than four days per month due to her impairments, that she would be "off task" 20 percent of the workday, and that she would need to take daily unscheduled breaks. AR 799-800. These limitations were not included in Plaintiff's RFC. Thus, the ALJ committed harmful error by discounting Dr. Menninger's opinion. *See Samuel Shane W.*, 2021 WL 1963618, at *5.

## C.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The Commissioner argues that under the new regulations governing the evaluation of medical evidence, an ALJ need not provide any reason for rejecting lay witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in

this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet addressed whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have suggested that the new regulations may remove the ALJ's obligation to address lay testimony altogether, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Gretchen S. v. Saul*, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) ("[T]here is an argument that the ALJ is no longer required to provide 'arguably germane reasons' for disregarding such statements, as the Ninth Circuit has traditionally required."). On the Court's reading, however, the new regulations do not to do away with the ALJ's obligation to address lay witness testimony altogether. Instead, it only clarifies that the ALJ does not need to use the new standards for evaluating medical opinion evidence when evaluating non-medical source lay testimony. *See* 20 C.F.R. § 404.1520c(d). Because there are no provisions of the new regulations that unambiguously remove the ALJ's obligation to address lay witness testimony, it follows that the ALJ must continue to give germane reasons for discounting lay witness testimony. *See Woods*, --- F.4th at ---, 2022 WL 1195334, at *4 ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations."). Further, courts have continued to conclude under the new regulations that an ALJ's failure to address lay testimony is error. *See, e.g.*, *Paulette N. v. Saul*, 2021 WL 4902421, at *10 (N.D. Cal. Oct. 21, 2021) (stating that the ALJ's failure to discuss the plaintiff's

PAGE 17 – OPINION AND ORDER

daughter's testimony was harmful error); *Christopher C. v. Kijakazi*, 2021 WL 4061557, at *8

(D. Or. Sept. 7, 2021) (stating that the ALJ's failure to address the plaintiff's father's testimony

was harmful error); *Kay J. v. Comm'r of Soc. Sec.*, 2021 WL 4087833, at *3 (W.D. Wash.

July 7, 2021) ("The Court agrees the ALJ erred by failing to address the lay witness testimony.").

      Plaintiff argues that the ALJ erred by rejecting the testimony of Plaintiff's father, Harold

F. The Commissioner argues that any error the ALJ committed in failing to address Harold's

letter was harmless because his testimony identified no limitation not already accounted for in

Plaintiff's testimony and the Court can therefore discount Harold's testimony for the same

reasons the ALJ rejected Plaintiff's testimony. Because the Court has rejected the ALJ's reasons

to discount Plaintiff's testimony, those reasons do not provide a basis to discount Harold's

testimony. Thus, the ALJ committed harmful error by failing to address Harold's testimony.

## D.  Remand

      Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246

F.3d 1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for

additional investigation or explanation, a court has discretion to remand for immediate payment

of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014).

The issue turns on the utility of further proceedings. A court may not award benefits punitively

and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by

the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r*

*of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

      In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, there are outstanding ambiguities to be resolved with respect to Plaintiff's RFC. The Court remands for further proceedings so that the ALJ can properly evaluate Plaintiff's symptom testimony, Dr. Menninger's opinion, and Harold's testimony, reevaluate Plaintiff's RFC, and continue to step four and five based on any revised RFC.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 16th day of May, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge